Ure Law Firm, A.P.C.
800 West 6th Street, Suite 940
Los Angeles, CA 90017
Telephone: 213-202-6070
Facsimile:  213–202-6075

Thomas B. Ure, State Bar No. 170492
tom@urelawfirm.com

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| IN RE:<br><br>COREY DEMON SIMS,<br><br>    Debtor-in-Possession.. | **Case No. 2:19-bk-19146-WB**<br><br>**CHAPTER 11**<br><br>**DEBTOR'S NOTICE OF MOTION AND MOTION TO:**<br>**(1)** **APPROVE SALE OF REAL PROPERTY LOCATED AT 1320 W. 53rd ST., LOS ANGELES, CA 90037-3437 FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS, AND**<br>**(2)** **APPROVE PAYMENT OF REAL ESTATE BROKER'S COMMISSIONS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF CHRISTINA KIMBLE IN SUPPORT THEREOF**<br><br>**_Hearing:_**<br>DATE:     July 23, 2020<br>TIME:     10:00 a.m.<br>PLACE:    Courtroom 1375, 13th Floor<br>         255 E. Temple Street<br>         Los Angeles, CA 90012 |

Debtor COREY DEMON SIMS ("Debtor") hereby moves the Court for an order (1) under 11 U.S.C. §363 and Local Bankruptcy Rules 6004-1(d) and 9013-1, confirming the sale by the Debtor of all of the estate's right, title and interest in a parcel of real property commonly known as 1320 W. 53rd St., Los Angeles, CA 90037-3437 ("Property") to Timothy Wen ("Buyer") for $775,000.00; and (2) authorizing escrow to pay commission to the real estate broker.

1    Pursuant to Local Bankruptcy Rule 6003-1(d), Debtor provides the following information:

2    **A.**    **Date, Time and Place of Hearing:**  The date, time and place of the hearing on the

3    Motion are set forth above.  The Court may entertain higher and better bids at the time of the hearing

4    on the Motion.

5    **B.**    **Proposed Buyer:**  Timothy Wen.

6    **C.**    **Description of the Property to be Sold:** The property to be sold consists of all of the

7    estate's right, title and interest in the Property.

8    **D.**    **Terms and Conditions of the Proposed Sale, Including the Price and All**

9    **Contingencies:** The terms and conditions of the sale of the Property to the Buyer are memorialized

10   in the Sale Escrow Instructions ("Escrow Instructions") attached as Exhibit B to the Declaration of

11   Christina Kimble.  Without limiting or altering the terms detailed in the Sale Agreement, those terms

12   are summarized as follows: The purchase price for the Property is $775,000.

13   **E.**    **Whether the Sale is Free and Clear of Liens, Claims and Interests or Subject to**

14   **Them:** Debtor intends to sell the Property to the Buyer free and clear of all liens and claims, with

15   those liens removed from the Property and the allowed amounts of certain liens in favor of the Select

16   Portfolio Servicing, Inc. (the "SPS"), Danco, Inc. ("Danco"), and Terra Nova Capital, Inc. ("Terra

17   Nova"), Franchise Tax Board (the "FTB"), and the Internal Revenue Service (the "IRS") to be paid

18   through escrow as follows:

19        1.        Debtor proposes to pay through escrow, the allowable amount of the liens due to  SPS,

20                  which is estimated to be $309,919.60 plus additional daily interest of approximately

21                  $24.22 per day commencing June 1, 2020;

22        2.        Debtor proposes to pay, through escrow, the allowable amount of the liens due to

23                  Danco, which is estimated to be $282,358.19 plus additional daily interest of

24                  approximately $79.06 per day commencing June 1, 2020;

25        3.        Debtor proposes to pay, through escrow, the allowable amount of the liens due to

26                  Terra Nova, which is estimated to be $25,110.00;

27        4.        Debtor proposes to pay, through escrow, all customary costs of sale;

28        5.        Debtor proposed to pay, through escrow, commissions totaling 5% of the sale price;

6.      Debtor proposes to pay, through escrow, the remaining net proceeds from the sale to the FTB as a partial satisfaction of its lien which is estimated to be $110,471.59;

7.      Debtor shall receive no proceeds from the sale.

8.      The lien of the IRS in the approximate amount of $19,750.40 will not be paid as proceeds are insufficient to satisfy the lien.  However, the IRS shall retain its secured lien on the Debtor's remaining three pieces of real property.

**F.**      **Possible Tax Consequences to the Estate:** Debtor does not believe it will incur any tax consequences from the Sale as there will be no capital gains.

**G.**      **Date by which Objections Must be Filed and Served:** Any objection to the Motion must be filed and served not later than 14 days before the hearing.

**H.**      **Good Faith Purchaser:** Debtor seeks a Court ruling that the party to whom the Court confirms the sale is a good faith purchaser for purposes of 11 U.S.C. § 363(m).

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities**,** the Declaration of Christina Kimble, the papers and pleadings on file in this case, and such other evidence as may be presented to the Court.

///

///

///

1    **<u>NOTICE</u>**

2    **PURSUANT TO LOCAL BANKRUPTCY RULES, ANY OPPOSITION TO**

3    **THE MOTION MUST BE FILED WITH THE BANKRUPTCY COURT AND**

4    **SERVED UPON DEBTOR, DEBTOR'S ATTORNEY AT THE ADDRESS SET**

5    **FORTH ABOVE, AND THE UNITED STATES TRUSTEE, NO LESS THAN**

6    **FOURTEEN (14) DAYS PRIOR TO THE ABOVE HEARING DATE.**

7    **FAILURE TO FILE A WRITTEN RESPONSE WITHIN THE PRESCRIBED**

8    **TIME PERIOD MAY BE DEEMED AS A WAIVER OF YOUR RIGHT TO**

9    **OPPOSE THIS MOTION AND MAY RESULT IN THE COURT GRANTING**

10   **THE   RELIEF   REQUESTED   HEREIN   PURSUANT   TO   LOCAL**

11   **BANKRUPTCY RULES.**

12   Dated:   6/12/20                          Respectfully Submitted,

13                                             URE LAW FIRM

14                                   By:  /s/ Thomas B. Ure
                                           Thomas B. Ure
15                                         Attorney for Debtor

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## <u>BACKGROUND</u>

### A.    <u>Bankruptcy Background</u>

Debtor commenced this Chapter 11 case on August 6, 2019.

Debtor is an individual and owns his residence as well as three rental properties.

Through this Motion, Debtor seeks to sell one of the rental properties located at 1320 W. 53rd St., Los Angeles, CA 90037-3437.

Debtor anticipates the proceeds from the sale will be sufficient to satisfy costs of sale, commissions, payment in full of all consensual liens as well as partial satisfaction of a tax lien recorded by the Franchise Tax Board.  The Internal Revenue Service also has a tax lien junior to all consensual liens and junior to the tax lien of the Franchise Tax Board.  Debtor anticipates that the Internal Revenue Service will consent to the release of its lien on this property and maintain its lien on the remaining three properties.

### B.    <u>The Property</u>

The Property subject to sale is a parcel of real property commonly known as 1320 W. 53rd St., Los Angeles, CA 90037-3437.

### C.    <u>The Marketing Efforts for the Property</u>

On or about March 4, 2020, Debtor entered into a Residential Listing Agreement with Christina Kimble of Golden State Realtors Group.  See Declaration of Christina Kimble, Exhibit A.

The Property was successfully marketed through traditional methods including listing on the Multiple Listing Service, Zillow and similar marketing websites and a number of written offers were received.

### D.    <u>The Proposed Sale to the Buyer</u>

Debtor has received an offer from Buyer to purchase the estate's interest in the Property, which is memorialized in the Escrow Instructions.  The Debtor accepted the offer subject to Court approval.  The proposed sale of the Property is on an "as is" and "where is" basis, without any warranty or recourse, subject only to Court approval.  The Buyer's purchase of the Property is not

1

subject to any contingencies other than entry of an order approving the sale and the closing of the sale.

**E.**   **Liens and Claims Against the Property and Proposed Treatment Thereof**

    **1.**   **Identity of Liens and Claims**

Debtor is informed and believes that the liens against the Property consist of the following:

| Lienholder | Recordation Date | Amount Owed |
|---|---|---|
| Select Portfolio Servicing | 10/31/2003 | $309,919.60 |
| Danco, Inc. | 4/4/2014 | $282,358.19 |
| Terra Nova Capital, Inc. | 4/18/2014 | $25,110.00 |
| Franchise Tax Board | 2/23/2012, 8/29/2012, 7/2/2015 | $132,980.72 |
| Internal Revenue Service | 3/22/2017 | $19,750.40 |
| Total | | $617,387.79 |

    **2.**   **Treatment of the Liens**

Debtor intends to sell the Property to the Buyer free and clear of all liens and claims, with those liens removed from the Property and the allowed amounts of certain liens in favor of the Select Portfolio Servicing, Inc. (the "SPS"), Danco, Inc. ("Danco"), and Terra Nova Capital, Inc. ("Terra Nova"), Franchise Tax Board (the "FTB"), and the Internal Revenue Service (the "IRS") to be paid through escrow as follows:

    1.    Debtor proposes to pay through escrow, the allowable amount of the liens due to SPS, which is estimated to be $309,919.60 plus additional daily interest of approximately $24.22 per day commencing June 1, 2020;

    2.    Debtor proposes to pay, through escrow, the allowable amount of the liens due to Danco, which is estimated to be $282,358.19 plus additional daily interest of approximately $79.06 per day commencing June 1, 2020;

    3.    Debtor proposes to pay, through escrow, the allowable amount of the liens due to Terra Nova, which is estimated to be $25,110.00;

    4.    Debtor proposes to pay, through escrow, all customary costs of sale;

    5.    Debtor proposed to pay, through escrow, commissions totaling 5% of the sale price;

6.      Debtor proposes to pay, through escrow, the remaining net proceeds from the sale to the FTB as a partial satisfaction of its lien which is estimated to be $110,471.59;

7.      Debtor shall receive no proceeds from the sale.

8.      The lien of the IRS in the approximate amount of $19,750.40 will not be paid as proceeds are insufficient to satisfy the lien.  However, the IRS shall retain its secured lien on the Debtor's remaining three pieces of real property.

**F.      Proposed Overbid Procedures**

Debtor requests that the Court approve the sale without overbid procedures.

**G.      Approval of Payment of Commissions to Real Estate Brokers Through Escrow**

Debtor also seeks an order from the Court authorizing escrow to pay a commission to the Broker in the amount of 5% of the sales price.

**H.      Good Faith Purchaser Status for Buyer**

Debtor also seeks a Court ruling that the party to whom the Court confirms the sale is a good faith purchaser for purposes of 11 U.S.C. § 363(m).  The Property has been marketed through the retained broker.  The Debtor has no connection with the Buyer and the Escrow Instructions were negotiated at arm's length between third parties.

**II.**

**LEGAL ARGUMENT**

**A.      The Court Should Approve the Sale of the Property Free and Clear of Liens and Claims**

**1.      The Sale is Supported by Sound Business Judgment and is in the Best Interest of the Estate and Its Creditors**

The proposed sale is an exercise of the sound business judgment of Debtor.  Debtor believes that the proposed sale of the Property at the hearing is the best method by which to maximize the value of the estate's interest in the Property.  As detailed above, Debtor retained a licenced broker to list, market and aid in the sale of the Property.  The broker's efforts led to multiple interested parties and Debtor has selected Buyer as the highest offer.  Debtor believes the sale price will be acceptable to the lienholders.

///

**B.    The Property May Be Sold Free and Clear of Liens and Claims**

Section 363(f) provides that, upon certain conditions, a Debtor may sell property free and clear of a lien or interest in such property.  11 U.S.C. § 363(f)(2) allows a property to be sold free and clear of liens by consent.  Debtor believes that the lienholders will consent to the terms of the proposed sale.

**C.    Debtor Requests that the Court Find that the Buyer is a Good Faith Purchasers Pursuant to Section 363(m) of the Bankruptcy Code**

A sale of property is protected from the effect of reversal on appeal of the authorization to sell or lease as long as the Court finds that the purchaser acted in good faith and the appellant fails to obtain a stay of the sale. 11 U.S.C. § 363(m).  A good faith purchaser is one who buys in good faith and for value.  *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992).  Although the Code does not define "good faith," courts have provided guidance as to the appropriate factors to consider.  *See, id.*  (Lack of good faith generally shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders).  Thus, the good faith requirement focuses primarily on the disclosure of material sale terms and the absence of fraud or collusion between the purchaser and other bidders or the trustee (or, in this case, the Debtor).  The Debtor has no connection with the Buyer, terms of the sale  were negotiated at arms length between third parties.  There is no fraud or collusion with respect to this transaction, and Debtor requests that the court make a finding that the confirmed buyer is a good faith purchasers of the Property within the meaning of section 363(m).

**D.    Debtor Requests that the Court Waive the Fourteen Day Stay as Set Forth in Bankruptcy Rule 6004((h)**

Rule 6004(h) of the Federal Rules of Bankruptcy Procedure provides, amount other things, that an order authorizing the sale of property is stayed until the expiration of fourteen days after entry of the order, unless the Court orders otherwise.  Here, all parties with a potential lien, claim or interest in the Property have been service with notice of the sale and an opportunity to object, and the fourteen day waiting period could only operate to delay the closing of escrow.  Under these circumstances, the court should waive the fourteen day stay of Bankruptcy Rule 6004(h) to permit the Purchaser to proceed with the close of escrow on the sale as soon as possible.

# CIII.

## CONCLUSION

Based on the foregoing, Debtor respectfully requests this Court:

1.    Confirm the proposed sale by Debtor of the Property, including all of the right, title and interest of the Debtor, to the Buyer on the terms indicated in the Escrow Instructions;

2.    Direct that the sale be free and clear of all liens, claims and interests;

3.    Authorize escrow to make the following payments from the proceeds of the sale:

    a.    The allowable amount of the liens due to  SPS, which is estimated to be $309,919.60 plus additional daily interest of approximately $24.22 per day commencing June 1, 2020;

    b.    The allowable amount of the liens due to  Danco, which is estimated to be $282,358.19 plus additional daily interest of approximately $79.06 per day commencing June 1, 2020;

    c.    The allowable amount of the liens due to Terra Nova, which is estimated to be $25,110.00;

    d.    All customary costs of sale;

    e.    Commissions totaling 5% of the sale price;

    f.    The remaining net proceeds from the sale to the FTB as a partial satisfaction of its lien which is estimated to be $110,471.59;

    g.    Debtor shall receive no proceeds from the sale.

    h.    The lien of the IRS in the approximate amount of $19,750.40 will not be paid as proceeds are insufficient to satisfy the lien.  However, the IRS shall retain its secured lien on the Debtor's remaining three pieces of real property.

4.    Waive the fourteen day stay;

///

///

///

1          5.      Any such further relief as the Court deems just and proper.

2    Dated:    6/23/20                                    Respectfully Submitted,

3                                                         URE LAW FIRM

4                                                         By:   /s/ Thomas B. Ure
                                                         Thomas B. Ure
5                                                        Attorney for Debtor

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DECLARATION OF CHRISTINA KIMBLE

I, **Christina Kimble,** do hereby declare under penalty of perjury, that the following is true and correct to the best of my personal knowledge and if called upon to testify thereto, I could and would do so competently and truthfully.

1.    I have been a licensed real estate agent since 2007 (License number 01395886).

2.    On or about March 4 2020, I was retained by the seller of the real property commonly known as 1320 West 53rd Street, Los Angeles, CA 90037 (hereinafter the "Property"), and legally described as:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Lot 188 of Vermont avenue villa Tract, in the City of Los Angeles,

State of California, as per Map recorded in Book 11, Page 37 of

Maps, in the Office of the County Recorder of said County.

3.    Attached hereto, marked Exhibit "A" is a copy of the listing agreement.

4.    After being hired, I marketed the Property using the traditional marketing tools, including listing the Property on MLS, Zillow, and related public sites to expose the property to as many possible buyers.

5.    After receiving a number of offers, Seller selected Buyer as the best buyer when factoring in the offer price and financial ability to close.

6.    The agreed sales price is $775,000.00.  Attached hereto, marked Exhibit "B" is a copy of the Escrow Instructions.

7.    After opening escrow, an Estimate Closing Statement was prepared by Escrow. Attached hereto, marked Exhibit "C" is a true and correct copy of the Estimated Closing Statement.

///

///

///

DocuSign Envelope ID: FB7A97DB-466A-44FD-BE16-7780C548DE7

8.    To my actual knowledge none of the parties which submitted offers for the Subject

Property are affiliated in any way with the seller of the property.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this day 25

___of June, 2020, at Los Angeles, California.

DocuSigned by:

*christina kimble*

77FCAABB1EBD4B1...

_____

Christina Kimble

EXHIBIT A



CALIFORNIA
ASSOCIATION
OF REALTORS®

## DISCLOSURE REGARDING
## REAL ESTATE AGENCY RELATIONSHIP
(Seller's Brokerage Firm to Seller)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/18)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k) and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**
A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
   (a)   Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b)   A duty of honest and fair dealing and good faith.
   (c)   A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**
A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
   (a)   Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b)   A duty of honest and fair dealing and good faith.
   (c)   A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**
A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
   (a)   A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
   (b)   Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**
Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant _Corey Sims_____ Date 3/4/2020
                                    E9B28CDA7A5949C...
                                    **Corey Sims**

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date _____

Agent _DocuSigned by:_ ___**Golden State Realtors Group**_____ DRE Lic. # **01234342**
                                    Real Estate Broker (Firm)
By _christina kimble_____ DRE Lic. # **01395886**_____ Date 3/1/2020
     77FCA...
     (Salesperson or Broker-Associate, if any)  **Christina Palmer**

© 1991-2018, California Association of REALTORS®, Inc.

**AD REVISED 12/18 (PAGE 1 OF 2)**
**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

EQUAL HOUSING
OPPORTUNITY

**CIVIL CODE SECTIONS 2079.24 (2079.16 APPEARS ON THE FRONT)**

2079.13. As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation.**(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(n)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.
**2079.14.** A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.
**2079.15.** In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.
**2079.16** Reproduced on Page 1 of this AD form.
**2079.17(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.
CONFIRMATION: The following agency relationships are confirmed for this transaction:

Seller's Brokerage Firm _____DO NOT COMPLETE. SAMPLE ONLY_____ License Number _____
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent _____DO NOT COMPLETE. SAMPLE ONLY_____ License Number _____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage Firm _____DO NOT COMPLETE. SAMPLE ONLY_____ License Number _____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent _____DO NOT COMPLETE. SAMPLE ONLY_____ License Number _____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.
**2079.18** (Repealed pursuant to AB-1289)
**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.
**2079.21 (a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
**2079.22** Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.
**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.
**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 1991-2018, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**AD REVISED 12/18 (PAGE 2 OF 2)**
**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
## OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, Revised 12/18)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both seller and buyer with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | |
|---|---|---|
| Seller _Corey Sims_ | _Corey Sims_ | Date 3/4/2020 |
| Seller ___E9B26CDA7A5949C...___ | | Date _____ |
| Buyer _____ | | Date _____ |
| Buyer _____ | | Date _____ |
| Buyer's Brokerage Firm _____ | DRE Lic # _____ | Date _____ |
| By _____ | DRE Lic # _____ | Date _____ |
| Seller's Brokerage Firm _Golden State Realtors Group_ | DRE Lic # _01234342_ | Date _____ |
| By _Christina Kimble_ | DRE Lic # _01395886_ | Date 3/1/2020 |
| _Christina Palmer_ | | |

© 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**PRBS REVISED 12/18 (PAGE 1 OF 1)**
## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)



# WIRE FRAUD AND ELECTRONIC FUNDS
# TRANSFER ADVISORY
## (C.A.R. Form WFA, Revised 12/17)

Property Address: _**1320 W 53rd St, Los Angeles, CA  90037-3437**_ _____ ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

## ACCORDINGLY, YOU ARE ADVISED:

1.  **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2.  **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3.  **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4.  **Avoid sending personal information in emails or texts.  Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5.  **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

| | | |
|---|---|---|
| Buyer/Tenant | | Date |
| Buyer/Tenant | | Date |
| Seller/Landlord | _Corey Sims_   **Corey Sims** | Date 3/4/2020 |
| | E9B26CDA7A5949C... | |
| Seller/Landlord | | Date |

©2016-2017, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

R E B S / L L C

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



EQUAL HOUSING
OPPORTUNITY

**WFA REVISED 12/17 (PAGE 1 OF 1)**
**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# RESIDENTIAL LISTING AGREEMENT
## (Exclusive Authorization and Right to Sell)
### (C.A.R. Form RLA, Revised 12/19)

Date Prepared: _02/28/2020_

1. **EXCLUSIVE RIGHT TO SELL:** _Corey Sims_ ("Seller")
hereby employs and grants _Golden State Realtors Group_ ("Broker")
beginning (date) _February 28, 2020_ and ending at 11:59 P.M. on (date) ("Listing Period")
the exclusive and irrevocable right to sell or exchange the real property described as _1320 W 53rd St_
_____, situated in _Los Angeles_ (City),
_Los Angeles_ (County), California, _90037-3437_ (Zip Code), Assessor's Parcel No. _5002005025_ ("Property").
☐ This Property is a manufactured (mobile) home. See addendum for additional terms.
☐ This Property is being sold as part of a probate, conservatorship or guardianship. See addendum for additional terms.

2. **LISTING PRICE AND TERMS:**
   **A.** The listing price shall be: _Seven Hundred Ninety-Nine Thousand_
   _____ Dollars ($ _799,000.00_ ).
   **B.** Listing Terms: _____
   _____.

3. **COMPENSATION TO BROKER:**

   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).**

   **A.** Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☐ _____ percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____, AND _____, as follows:

   **(1)** If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)

   **OR (2)** If within _____ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.

   **OR (3)** If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.

   **B.** If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under paragraph 3A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.

   **C.** In addition, Seller agrees to pay Broker: _____.

   **D.** Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.

   **(1)** Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in 3A, either ☐ _____ percent of the purchase price, or ☐ $ _____.

   **(2)** Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.

   **E.** Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.

   **F. (1)** Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: _____.

   **(2)** Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: _____
   _____.

   **(3)** If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.

© 2019, California Association of REALTORS®, Inc.
**RLA REVISED 12/19 (PAGE 1 OF 5)**

Seller's Initials ( _CS_ ) ( _____ )

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 5)**

Property Address: *1320 W 53rd St, Los Angeles, CA 90037-3437*    Date: *02/28/2020*

**4.  A.  ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
ADDITIONAL ITEMS EXCLUDED: _____ .
ADDITIONAL ITEMS INCLUDED: _____ .
Seller intends that the above items be excluded or included in offering the Property for sale, but understands that**:** (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the  sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

**B.  (1) Leased Or Not Owned Items:** The following items are leased or not owned by Seller:
☐ Solar power system        ☐ Alarm system        ☐ Propane tank        ☐ Water Softener
☐ Other _____

**(2) Liened Items:** The following items have been financed and a lien has been placed on the Property to secure payment:
☐ Solar power system        ☐ Windows or doors        ☐ Heating/Ventilation/Air conditioning system
☐ Other _____
Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

**5.  MULTIPLE LISTING SERVICE:**
**A.**  Broker is a participant/subscriber to _____ Multiple Listing Service (MLS) and possibly others. Unless otherwise instructed in writing the Property will be listed with the MLS(s) specified above. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS and (ii) may be provided to the MLS even if the Property was not listed with the MLS. Seller consents to Broker providing a copy of this listing agreement to the MLS if required by the MLS.

---

**BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS; PRESENTING ALL OFFERS**

**WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.

**EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS.

**CLOSED/PRIVATE LISTING CLUBS OR GROUPS:** Closed or private listing clubs or groups are not the same as the MLS. The MLS referred to above is accessible to all eligible real estate licensees and provides broad exposure for a listed property. Private or closed listing clubs or groups of licensees may have been formed outside the MLS. Private or closed listing clubs or groups are accessible to a more limited number of licensees and generally offer less exposure for listed property. Whether listing property through a closed, private network - and excluding it from the MLS - is advantageous or disadvantageous to a seller, and why, should be discussed with the agent taking the Seller's listing.

**NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

**OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (a) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (b) Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings; (c) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.

**REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.

**PRESENTING ALL OFFERS:** Seller understands that Broker must present all offers received for Seller's Property unless Seller gives Broker written instructions to the contrary.

Seller's Initials ( _____ )( _____ )        Broker's/Agent's Initials ( _____ )( _____ )

---

Seller's Initials ( _____ )  ( _____ )

**RLA REVISED 12/19 (PAGE 2 OF 5)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 5)**

DocuSign Envelope ID: 31E709ED-F20D-465D-882E-EC5F1C4C8574
Case 2:19-bk-19146-WB  Doc 98  Filed 06/26/20  Entered 06/26/20 10:44:35  Desc
Main Document  Page 20 of 38

Property Address: *1320 W 53rd St, Los Angeles, CA 90037-3437*

**B.** MLS rules generally provide that residential real property and vacant lot listings be submitted to the MLS within 2 days or some other period of time after all necessary signatures have been obtained on the listing agreement. Broker will not have to submit this listing to the MLS if, within that time, Broker submits to the MLS an appropriate form signed by Seller.
☐ Seller elects to exclude the Property from the MLS as provided by C.A.R. Form SELM or the local equivalent form.

**C.** MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Seller acknowledges that for any of the below opt-out instructions to be effective, Seller must make them on a separate instruction to Broker signed by Seller. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:

**(1) Property Availability On The MLS; Address On the MLS:** Seller can instruct Broker to have the MLS not display the Property or the Property address on the Internet. Seller understands that either of these opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.

**(2) Feature Opt-Outs:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below. Seller understands (i) that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.

**(a) Comments And Reviews:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.

**(b) Automated Estimate Of Value:** The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display. ☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

**6. SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

**7. BROKER'S AND SELLER'S DUTIES:**

**A.** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and disclosures including those specified in 7C as necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.

**B.** Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to paragraph 3F, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.

**C.** Investigations and Reports: Seller agrees, within 5 (or____) Days of the beginning date of this Agreement, to pay for the following pre-sale reports: ☐ Structural Pest Control ☐ General Property Inspection ☐ Homeowners Association Documents ☐ Other _____

**D.** Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose including dangerous or hidden conditions on the Property.

**8. DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

**9. AGENCY RELATIONSHIPS:**

**A. Disclosure:** The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).

**B. Seller Representation:** Broker shall represent Seller in any resulting transaction, except as specified in paragraph 3F.

**C. Possible Dual Agency With Buyer:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

Seller's Initials (  *CS*  ) (  _____  )

**RLA REVISED 12/19 (PAGE 3 OF 5)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 5)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

*1320 W 53rd St*



Property Address: *1320 W 53rd St, Los Angeles, CA 90037-3437*

   **D.**  **Confirmation:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

   **E.**  **Potentially Competing Sellers and Buyers:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**10. SECURITY, INSURANCE, SHOWINGS, AUDIO AND VIDEO:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller. Persons visiting the Property may not be aware that they could be recorded by audio or visual devices installed by Seller (such as "nanny cams" and hidden security cameras). Seller is advised to post notice disclosing the existence of security devices.

**11. PHOTOGRAPHS AND INTERNET ADVERTISING:**

   **A.**  In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ if checked, does not agree) that Broker or others may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that if Broker engages third parties to capture and/or reproduce and display Images, the agreement between Broker and those third parties may provide such third parties with certain rights to those Images. The rights to the Images may impact Broker's control or lack of control of future use of the Images. If Seller is concerned, Seller should request that Broker provide any third parties' agreement impacting the Images. Seller also acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker and agrees that such Images are the property of Broker and that Broker may use such Images for advertising, including post sale and for Broker's business in the future.

   **B.**  Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked ) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

**12. KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

**13. SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

**14. EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

**15. ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker to enforce the compensation provisions of this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 19A.

**16. ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) ☐ Trust Advisory (C.A.R. Form TA)

  ☐ Seller intends to include a contingency to purchase a replacement property as part of any resulting transaction

_____

_____

_____

_____

**17. MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days** After its execution.

**18. SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

**19. DISPUTE RESOLUTION:**

   **A.**  **MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an

Seller's Initials ( _____ ) ( _____ )

**RLA REVISED 12/19 (PAGE 4 OF 5)**

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 5)**

DocuSign Envelope ID: 31E709ED-E20D-465D-882E-E6C51C9B9574

Property Address: *1320 W 53rd St, Los Angeles, CA 90037-3497*

action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. **Exclusions from this mediation agreement are specified in paragraph 19B.**

**B. ADDITIONAL MEDIATION TERMS:** The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is in the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.

**C. ADVISORY:** If Seller and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).

**20. ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

**21. OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows:_____
_____.

☐ REPRESENTATIVE CAPACITY: This Listing Agreement is being signed for Seller by an individual acting in a Representative Capacity as specified in the attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. Seller (i) represents that the entity for which the individual is signing already exists and (ii) shall Deliver to Broker, within 3 Days After Execution of this Agreement, evidence of authority to act (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

**By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.**

Seller _Corey Sims_ *Corey Sims* Date _3/4/2020_
DocuSigned by: Corey Sims — E9B28CDA7A5949C...

Address _p o box 2545_ City _Gardena_ State _CA_ Zip _90247_
Telephone _____ Fax _____ E-mail _neutralground03@yahoo.com_

Seller _____ Date _____

Address _____ City _____ State ____ Zip ____
Telephone _____ Fax _____ E-mail _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA)

Real Estate Broker (Firm) _Golden State Realtors Group_ DRE Lic. # _01234342_
Address _27525 Puerta Real Ste 226_ City _Mission Viejo_ State _CA_ Zip _92691_
By _christina kimble_ Tel._(714)709-1394_ E-mail _soldbyms.chris@gmail.com_ DRE Lic.# _01395886_ Date _3/1/2020_
*Christina Palmer*

By _____ Tel. _____ E-mail _____ DRE Lic.# _____ Date _____

☐ Two Brokers with different companies are co-listing the Property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 2019 California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**RLA REVISED 12/19 (PAGE 5 OF 5)**



**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 5 OF 5)**

DocuSign Envelope ID: 31E709ED-F20D-465D-882E-E6C51C4B3574

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**SELLER'S ADVISORY**
(C.A.R. Form SA, Revised 12/15)

Property Address: *1320 W 53rd St, Los Angeles, CA  90037-3437* _____ ("Property")

1. **INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals, as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or by the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.

2. **DISCLOSURES:**
   A. **General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, any and all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If you do not know what or how to disclose, you should consult a real estate attorney in California of your choosing. Broker cannot advise you on the legal sufficiency of any disclosures you make. If the Property you are selling is a residence with one to four units except for certain subdivisions, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.
   B. **Statutory Duties:** (For one-to-four Residential Units):
      **(1)** You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to honestly and completely fill out the TDS form in its entirety. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task.
      **(2)** Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets entitled "The Homeowner's Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home" and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.
      **(3)** If you know that your property is: (i) located within one mile of a former military ordnance location; or (ii) in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act, the Improvement Bond Act of 1915, and a notice concerning the contractual assessment provided by section 5898.24 of the Streets And Highways Code (collectively, "Special Tax Disclosures").
      **(4)** If the TDS, NHD, or lead, military ordnance, commercial zone or Special Tax Disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements; however, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.
   C. **Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death; however, California Civil Code Section 1710.2 provides that <u>you have no disclosure duty</u> "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease, or rent the real property, or [regardless of the date of occurrence] that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."
   D. **Condominiums and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowner's association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

3. **CONTRACT TERMS AND LEGAL REQUIREMENTS:**
   A. **Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price.

© 1991-2015, California Association of REALTORS®, Inc.                         Seller's Initials ( *CS* ) ( _____ )

**SA REVISED 12/15 (PAGE 1 OF 2)**



**SELLER'S ADVISORY (SA PAGE 1 OF 2)**

Property Address: *1320 W 53rd St, Los Angeles, CA 90037-3437* _____ Date: _____

**B. Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.

**C. Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.

**D. Government Required Repairs, Replacements and Alterations:** Under State law, Property owners with limited exceptions, are required to: (1) Install operable smoke alarms and brace water heaters and provide a Buyer with a statement of compliance. Existing operable smoke alarms, that met compliance standards when installed, do no have to be removed even if not up to current legal requirements. Smoke alarms that are added or that replace older versions must comply with current law; and (2) install carbon monoxide detection devices. Some city and county governments may impose additional requirements, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine which requirements apply to your Property, the extent to which your Property complies with such requirements, and the costs, if any, of compliance.

**E. EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE:** The new rule requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees be trained; and that they follow protective work practice standards. The rule applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at www.epa.gov/lead for more information.

**F. Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

**4. MARKETING CONSIDERATIONS:**

**A. Pre-Sale Inspections and Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems, making cosmetic improvements, and staging. Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional inspections prior to sale. Pre-sale inspections may include a general property inspection; an inspection for wood destroying pest and organisms (Structural Pest Control Report) and an inspection of the septic or well systems, if any, among others. By doing this, you then have an opportunity to make repairs before your Property is sold, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports or repairs that have been made, whether or not disclosed in a report, should be disclosed to the buyer (see "Disclosures" in paragraph 2 above). This is true even if the buyer gets his/her own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a Structural Pest Control Report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.

**B. Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.

**C. Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property, against injury, theft, loss, vandalism, damage, and other harm.

**D. Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

**5. OTHER ITEMS:**
_____
_____

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this document.

Seller *Corey Sims* _____ Date 3/4/2020
Print Name *Corey Sims*

Seller _____ Date _____
Print Name _____

Real Estate Broker (Listing Firm) *Golden State Realtors Group* _____ DRE Lic.#: *01234342*
By *christina kimble* _____ *Christina Palmer* DRE Lic.# *01395886* Date 3/1/2020
By _____ DRE Lic.# _____ Date _____
Address *27525 Puerta Real Ste 226* _____ City *Mission Viejo* State *CA* Zip *92691*
Telephone *(714)709-1394* _____ Fax _____ E-mail *soldbyms.chris@gmail.com*

© 1991-2015, California Association of REALTORS®, Inc. Copyright claimed in Form SA, exclusive of language required by California Civil Code §1710.2. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**SA REVISED 12/15 (PAGE 2 OF 2)**

**SELLER'S ADVISORY (SA PAGE 2 OF 2)**

DocuSign Envelope ID: 31E799ED-E20D-465D-B92E-E6C51C4B9574

# CALIFORNIA ASSOCIATION OF REALTORS®

# CALIFORNIA CONSUMER PRIVACY ACT ADVISORY
## (C.A.R. Form CCPA, 12/19)

As of January 1, 2020, the California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA") grants to California residents certain rights in their private, personal information that is collected by companies with whom they do business. Under the CCPA, "personal information" is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you, including, potentially, photographs of or sales information about your property. Some of your personal information will be collected and likely shared with others during the process of buying and selling real estate. Depending on the situation, you may have the right to "opt out" or stop the transfer of your personal information to others and request that certain businesses delete your personal information altogether. Not all businesses you interact with are required to comply with the law, primarily just those who meet the criteria of a covered "Business" as set forth in Section 1798.140 (c)]. For more information, you may ask your Broker for a copy of the C.A.R. Legal Q&A on the subject.

A real estate broker is likely to submit personal information to a Multiple Listing Service ("MLS") in order to help find a buyer for a seller's property. Through the MLS, the information is made available to real estate brokers and salespeople, and others. Even after a sale is complete, the MLS distributes sales information to the real estate community. Brokers, agents and MLSs may also share your personal information with others who post the personal information on websites or elsewhere, or otherwise use it. Thus, there are various service providers and companies in a real estate transaction who may be engaged in using or sharing data involving your personal information.

If your broker is a covered Business, it should have a privacy policy explaining your rights on its website and giving you an opportunity to request that personal information not be shared, used and even deleted. Even if your real estate brokerage is a covered Business, it needs, and is allowed, to keep your information to effectuate a sale and, by law, is required to maintain such information for three years to comply with regulatory requirements. Not all brokers are covered Businesses, however, and those that are not, do not have to comply with the CCPA.

Similarly, most MLSs will not be considered a covered Business. Instead, the MLS may be considered a Third Party in the event a covered Business (ex: brokerages, real estate listing aggregation or advertising internet sites or other outlets who meet the criteria of covered Businesses) exchanges personal information with the MLS. You do not have the right under the CCPA to require a Third Party to delete your personal information. And like real estate brokerages, even if an MLS is a covered Business, MLSs are also required by law to retain and make accessible in its computer system any and all listing and other information for three years.

Whether an MLS is a covered Business or a Third Party, you have a right to be notified about the sharing of your personal information and your right to contact a covered Business to opt out of your personal information being used, or shared with Third Parties. Since the MLSs and/or other entities receiving your personal information do not have direct contact with buyers and sellers and also may not be aware of which entities exchanging personal information are covered Businesses, this form is being used to notify you of your rights under the CCPA and your ability to direct requests to covered Businesses not to share personal information with Third Parties. One way to limit access to your personal information, is to inform your broker or salesperson you want to opt-out of the MLS, and if so, you will be asked to sign a document (Form SELM) confirming your request to keep your listing off the MLS. However, if you do so, it may be more difficult to sell your property or obtain the highest price for it because your property will not be exposed to the greatest number of real estate licensees and others.

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory.**

Buyer/Seller/Landlord/Tenant _____ Date_____

Buyer/Seller/Landlord/Tenant _____ Date_____

© 2019, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**CCPA 12/19 (PAGE 1 OF 1)**

EQUAL HOUSING OPPORTUNITY

**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)**

EXHIBIT B

LONG BEACH ESCROW CORPORATION
4515 E. ANAHEIM STREET, SECOND FLOOR
LONG BEACH, CA 90804
(562)-597-3336 * Fax (562)-597-2447

### SALE ESCROW INSTRUCTIONS

**Escrow Officer:** JOYCE CLARK
**Escrow No.:** 22014730-JC

**Date:** March 18, 2020

| | |
|---|---|
| Initial Deposit | $8,500.00 |
| Deposit Prior to Close of Escrow | $766,500.00 |
| Total Cash Thru | $775,000.00 |
| | |
| **TOTAL CONSIDERATION** | **$775,000.00** |

**LONG BEACH ESCROW CORPORATION IS LICENSED BY THE DEPARTMENT OF BUSINESS OVERSIGHT, STATE OF CALIFORNIA, ESCROW LICENSE NO. 9631872. LONG BEACH TRADING COMPANY, INC. IS AN AFFILIATE OF LONG BEACH ESCROW CORPORATION.**

Buyer(s) shall cause you to be handed herewith an initial deposit of $8,500.00

Buyer shall deliver to you any instruments and/or funds required from Buyer to enable you to comply with these instructions, all of which you are authorized to use and/or deliver on or before May 4, 2020, and when you are in a position to obtain a standard Policy of Title Insurance through TICOR TITLE COMPANY, provided that said policy has a liability of at least the amount of the above total consideration, covering the following described property in the City of LOS ANGELES, County of LOS ANGELES, State of CA: LOT 188 OF VERMONT AVENUE VILLA TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 11, PAGE 37 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY
**Property Address:** 1320 W. 53RD ST., LOS ANGELES, CA 90037-3437 (NOT VERIFIED BY ESCROW HOLDER)

**SHOWING TITLE VESTED IN:** TIMOTHY WEN

**FREE FROM ENCUMBRANCES EXCEPT:**

1.  All installment(s) of the General and Special County, and city (if any) taxes, including any special district levies, payments which are included therein and collected therewith, for current fiscal year, not delinquent, including taxes for ensuing year, if any, a lien not yet due or payable.

2.  Covenants, conditions, restrictions, reservations, rights, rights of way, easements and exceptions of minerals, oil, gas, water, carbons and hydrocarbons on or under said land, now of record, and in deed to file, if any, affecting the use and occupancy of said property.

3.  Assessments and bonds of record, if any, not delinquent.

**ADDITIONAL INSTRUCTIONS:**

1.  Escrow Holder has been handed: Copy of executed, dated Residential Purchase Agreement and Joint Escrow Instructions, referred to as the "Agreement," by and between the undersigned Buyer and Seller, which, by reference, is made a part hereof. The Agreement is to serve as your Escrow Instructions, and subject to the additional instructions as set forth below, Escrow Holder is authorized to act thereunder insofar as the processing of the above numbered escrow is concerned. Escrow Holder is to be concerned only with those paragraphs under the Agreement where Escrow Holder is given instructions to perform certain acts or with those paragraphs where Escrow Holder would generally and reasonably be expected to act. All other provisions of the Agreement, which the parties consider to be binding upon themselves, are considered to be outside the scope of Escrow Holder's responsibilities.

2.  Buyer shall deposit into Escrow a hazard insurance policy with replacement cost coverage. Receipt for premium indicated thereon shall be deposited into Escrow, or in lieu thereof, you shall pay the premium from Buyer's funds at close of Escrow.

3.  Seller to furnish Buyer, through this escrow, a one year home warranty program. Escrow Holder is to pay for same from Seller's funds at close of escrow upon presentation of bill, to a maximum of $700.00 , with Escrow Holder to deduct any excess premium from funds deposited by Buyer.

4.  Seller to provide Buyer, OUTSIDE OF ESCROW and prior to close of escrow, a natural hazard disclosure report. Escrow Holder's only duty shall be to pay billing for said report from Sellers proceeds at close of escrow. Escrow Holder will not receive a copy of said report through escrow. It shall be Buyer's duty to give Escrow Holder written notice of any disapproval of said natural hazard disclosure report. Buyer's failure to so notice Escrow Holder shall be deemed Escrow Holder's authorization to proceed with closing, and Escrow Holder's only concern shall be to pay billing for said report, if presented to Escrow Holder prior to close of escrow.

5.  IF BUYER FAILS TO COMPLETE THIS PURCHASE BECAUSE OF BUYER'S DEFAULT, SELLER SHALL RETAIN, AS LIQUIDATED DAMAGES, THE DEPOSIT ACTUALLY PAID. IF THE PROPERTY IS A DWELLING WITH NO MORE THAN FOUR UNITS, ONE OF WHICH BUYER INTENDS TO OCCUPY, THEN THE AMOUNT RETAINED SHALL BE NO MORE THAN 3% OF THE PURCHASE PRICE. ANY EXCESS SHALL BE RETURNED TO BUYER. RELEASE OF FUNDS WILL REQUIRE MUTUAL, SIGNED RELEASE INSTRUCTIONS FROM BUYER AND SELLER, JUDICIAL DECISION OR ARBITRATION AWARD. BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION FOR ANY INCREASED DEPOSIT. BUYER: (___ ___ ___ ___) SELLER: (___ ___ ___ ___).

SELLER(S) INITIALS:___ ___ ___ ___    BUYER(S) INITIALS:___ ___ ___ ___

6.    This escrow is subject to Buyers approval of Preliminary Title Report within 17 days of Acceptance. If no written disapproval of said Preliminary Title Report is received within the described time limit, said Preliminary Title report shall be deemed approved by Buyer.

7.    PRELIMINARY CHANGE OF OWNERSHIP INSTRUCTION: Pursuant to State Law (Section 480.3 of the Revenue and Taxation Code) **all deeds must be accompanied by a Preliminary Change of Ownership Report**, which has been completed by the **Transferee**. If this properly completed report is NOT presented at the time of recording, an additional charge of $20.00, as required by law, will be charged to the Buyer/Transferee. **Buyer/Transferee is RESPONSIBLE for completion of said report**. Escrow Holder is released from liability insofar as obtaining and/or completion of said report, or recorder's $20.00 charge. Buyer/Transferee acknowledges that there may be substantial penalties incurred in addition to the $20.00 fee, if a preliminary Change of ownership Report is NOT submitted by Buyer/Transferee to the Tax Assessor within 45 days of date of Grant Deed, Interspousal Deed or Quitclaim Deed.

8.    The parties hereto understand that the transfer of title may result in a reassessment of the subject property and the levy of a Supplemental Tax, and that a reference to reassessment and a lien for supplemental taxes may appear as an exception in the Policy of Title Insurance to be obtained herein. You are to have no liability or responsibility for any taxes assessed after the close of escrow. Your only responsibility is to prorate taxes as provided herein.

9.    The Tax Reform Act of 1986, provides that LONG BEACH ESCROW CORPORATION must report to the Internal Revenue Service certain information regarding all real estate transactions. This information includes, among other things, the Seller's Social Security number and/or Tax Identification number and forwarding address and the gross sales price of the transaction. This is not a requirement generated by LONG BEACH ESCROW CORPORATION, but rather a means of complying with the tax law. This information must be provided to LONG BEACH ESCROW CORPORATION upon the opening of escrow, and Escrow cannot close, nor can deeds or other documents be recorded until the information is provided and the Seller certifies the accuracy of the information in writing. By execution of the Escrow Instructions, the Parties acknowledge receipt of this Notice.

10.   The IRS requires reporting of real estate transactions by Escrow Holder to the appropriate authorities, when applicable. Seller and Buyer are aware that this escrow will not close until Seller has completed, signed and redeposited back into this escrow an IRS 1099 Real Estate Reporting Certification, reporting 100% of the gross purchase price, together with any additional documents or instructions in response thereto, when applicable. Seller understands they may be subject to civil or criminal penalties for failure to furnish a correct tax identification number to Escrow Holder for reporting this transaction as required by applicable laws. Seller further understands that Escrow Holder may be required to withhold as much as 10% of the gross sales price from a foreign Seller.

      Effective January 1, 2003, in accordance with Section 18662 of the Revenue and Taxation Code of California, a Buyer may be required to withhold an amount equal to 3 and 1/3 percent of the sales price in the case of the disposition of a California real property interest by either: 1. A seller who is an individual or when the disbursement instructions authorize the proceeds to be sent to a financial intermediary of the seller, or 2. A corporate seller that has no permanent place of business in California. The buyer may become subject to a penalty for failure to withhold an amount equal to the greater of 10 percent of the amount required to be withheld or five hundred dollars ($500.00). However, notwithstanding any other provision included in the California statutes referenced above, no buyer will be required to withhold any amount or be subject to penalty for failure to withhold if:1. The sales price of the California real property conveyed does not exceed one hundred thousand dollars($100,000.00), or 2. The seller executes a written certificate, under penalty of perjury , certifying that the seller is a corporation with a permanent place of business in California, or 3. The seller, who is an individual, executes a written certificate, under penalty of perjury, certifying: a. That the California real property being conveyed is the seller's principal residence (within the meaning of Section 121 of the Internal Revenue Code); b. That the California real property being conveyed is or will be exchanged for property of like kind (within the meaning of Section 1031 of the Internal Revenue Code), but only to the extent of the amount of gain not required to be recognized for California income tax purposes under Section 1031 of the Internal Revenue Code; c. That the California real property has been compulsorily or involuntarily converted (within the meaning of Section 1033 of the Internal Revenue Code) and that the seller intends to acquire property similar or related in service or use so as to be eligible under Section 1033 of the Internal Revenue Code, or; d. That the California real property transaction will result in a loss for California income tax purposes. The seller is subject to penalty for knowingly filing a fraudulent certificate for the purpose of avoiding the withholding requirement. The California statutes referenced above include provisions which authorize the Franchise Tax Board to grant a reduced withholding and waivers from withholding on a case-by-case basis for corporations or other entities.
      THE PARTIES TO THIS TRANSACTION SHOULD SEEK THE PROFESSIONAL ADVICE AND COUNSEL OF AN ATTORNEY, ACCOUNTANT OR OTHER TAX SPECIALIST'S OPINION CONCERNING THE EFFECT OF THIS LAW ON THIS TRANSACTION AND SHOULD NOT ACT ON ANY STATEMENTS MADE OR OMITTED BY THE ESCROW OR CLOSING OFFICER. Seller and Buyer hereto are aware that this escrow will not close until Seller has completed, signed and redeposited back into this escrow a Franchise Tax Board Form 593-C (for individual Sellers) or Franchise Tax Board Form 593-W (for non-individual Sellers), together with any additional documents or instructions in response thereto, when applicable.

11.   HOLD OPEN FEE: Notwithstanding any other provisions in these escrow instructions and in addition to other fees and costs to which you may be entitled, the parties, jointly and severally, agree that if this escrow is not closed within ninety (90) days of the date set for closing, Escrow Holder is instructed to, and without further instructions, withhold an escrow hold open fee of $50.00 per month from the funds on deposit with you regardless of who deposited such funds. The parties, jointly and severally, further agree that if you are, for any reason, required to hold funds after close of escrow, you are instructed to, and without further instructions, withhold an escrow fee of $50.00 per month from the funds on deposit with you regardless of who deposited such funds. The parties irrevocably instruct you to automatically cancel this file without further instructions when all funds on deposit have been disbursed.

SELLER(S) INITIALS:_____  ____  ____  ____        BUYER(S) INITIALS:_____  ____  ____

ESCROW NO:22014730-JC                                                                Date: March 18, 2020

12.    Unless stated to the contrary previously, and/or in addition to other costs and charges set forth in these escrow
instructions, Seller agrees to pay on demand, whether or not this escrow closes, all expenses and charges incurred by
you on Seller's behalf, including, but not limited to, charges for preliminary title reports, title reports, title
commitments, policies of title insurance, one half sub-escrow fees, beneficiary statements, beneficiary demands, offset
statements, documentary transfer tax, preparation of, notarization of and recording of documents necessary on Seller's
behalf, Seller's escrow fee and other costs, as charged.

Unless stated to the contrary previously, and/or in addition to the other costs and charges set forth in these escrow
instructions, Buyer agrees to pay on demand, whether or not this escrow closes, all expenses and charges incurred by
you on Buyer's behalf, new loan charges, existing loan assumption and transfer fees, one half sub-escrow fees,
lender's policy of title insurance, fire insurance premiums, Buyer's escrow fee and other costs as charged.

Make the following prorations and adjustments as of close of escrow.
X    Prorate taxes on real property, based on information furnished by seller/title company

I/We will pay, on demand, regardless of the consummation of this escrow, all charges incurred by you for me/us, including fee
for preparing instruments I/we execute, recording charges and your customary buyer's escrow fee.

All parties instruct Escrow Holder, that Escrow Holder's receipt of facsimile or email signature shall be legally binding upon the
parties hereto. However, notwithstanding this instruction, all parties acknowledge Escrow Holder's discretion regarding use of
facsimile or email signatures. Escrow Holder retains, at its sole discretion, the right to withhold compliance on any instruction
which Escrow Holder shall determine requires an original signature. In the event this escrow is in a position to close and any
party has not returned original signatures, Escrow Holder may, at its sole discretion, nevertheless proceed with closing this
escrow in compliance with any instructions received by facsimile or email signature.  BY THEIR SIGNATURES HEREON,
EACH PARTY HEREBY AGREES TO INDEMNIFY, HOLD HARMLESS AND DEFEND THE ESCROW HOLDER
AGAINST ANY LOSS, COST OR ACTION BY REASON OF ESCROW HOLDER ACTING UPON THAT PARTY'S
FACSIMILE OR EMAIL SIGNATURE ON ANY INSTRUCTION HERETO.

The undersigned Buyers and/or Sellers herein state and affirm that all "Digital Signatures" that appear on the Purchase
Agreement are our true and authentic signatures.  We further state we have chosen, of our own free will, to use this method of
signing any and all legal contracts and other related documentation with regard to said property. Escrow Holder and all other
entities related to this transaction are specifically instructed to rely on any Buyer's and/or Seller's signatures that appear
"Digitally".

**THE FOREGOING INSTRUCTIONS AND THOSE "GENERAL INSTRUCTIONS" ATTACHED HERETO AND
MADE A PART HEREOF ARE APPROVED AND ACCEPTED IN THEIR ENTIRETY AS FULLY SET OUT IN
THIS PARAGRAPH. EACH OF THE UNDERSIGNED BUYER(S) HEREBY AUTHORIZE ESCROW AGENT TO
FURNISH COPIES OF CLOSING STATEMENTS TO LENDER AND/OR BROKER INVOLVED.**
I/We have received a copy of these instructions.

**BUYER'S SIGNATURE:**

_____
TIMOTHY WEN

I/We will hand you all instruments and money necessary of me/us to enable you to comply therewith, including a deed to the
property described, executed in favor of the vestees, which you are authorized to use and deliver when you hold in this escrow
for my/our account the above sum, and any pro-rata adjustments and instruments deliverable to me under these instructions.
From funds due me/us, pay at the close of escrow any encumbrances of record, plus accrued interest, charges and bonus if any,
bonds, and/or assessments necessary to comply with same, and/or pay any delinquent monthly installment(s) on existing
encumbrance(s) as disclosed by beneficiary statement(s), without my/our subsequent approval.

Instruct the Title Company to begin search of title at once. Deduct and pay from proceeds due me/us, any expenses incurred in
my/our behalf including charges for assurance of title, for sending in offset, or beneficiaries' statement(s) and/or demand(s),
Documentary Transfer Tax on Deed, filling in, acknowledging, and recording any document(s) necessary on my/our part,
including recording of purchase price encumbrance(s) and seller's escrow fee as charged.

I/We have received a copy of these instructions.

**SELLER'S SIGNATURE:**

_____
COREY SIMS

SELLER(S) INITIALS:_____ _____ _____        BUYER(S) INITIALS:_____ _____ _____

ESCROW NO:22014730-JC
Date: March 18, 2020

## GENERAL PROVISIONS

1. Your duty to act as an escrow holder shall not commence until these instructions, duly executed by all parties hereto, are received by you. Until such time, either party may unilaterally cancel and upon written request delivered and received by you, the party may withdraw funds and documents he or his agent previously handed to you.

2. All funds received in this escrow shall be deposited with other escrow funds in a general escrow account or accounts of Long Beach Escrow Corporation, with any state bank or national bank, and may be transferred to any other such general escrow account or accounts. All disbursements shall be made by check of Long Beach Escrow Corporation. You shall not be responsible for closing until funds received by escrow are available for withdrawal. If for any reason funds are retained or remain in escrow, you are to deduct therefrom a reasonable monthly charge as custodian thereof of no less than $25.00 per month.

3. All prorations and adjustments called for in this escrow are to be made on the basis of a 30 day month unless otherwise instructed in writing. Prorations of real property taxes and assessments are to be based on the latest available tax figures from the office of the county tax assessor, as furnished by the insuring title company. You are to use information contained on rental statements provided you, beneficiary's statement and fire insurance policies delivered into escrow for the prorations provided for herein. You are released from any responsibility or liability in the event this information received by escrow holder is incorrect.

4. The phrase "close of escrow" as used in this escrow means the date on which documents are recorded, unless otherwise specified.

5. All disbursement of funds and/or delivery of documents, notices and statements due the undersigned are to be mailed, unregistered, to the respective addresses shown herein, or most recent address provided, unless otherwise directed. You are authorized to record any instruments delivered through this escrow, if necessary or proper for the issuance of the policy of title insurance specified.

6. You are authorized to pay all encumbrances necessary to place title in condition called for herein, including but not limited to prepayment penalties, without further approval of the undersigned. If you pay a demand to reconvey a revolving line of credit or equityline deed of trust, you are hereby instructed on my behalf and for my benefit, to request that the lender issuing said demand cancel said revolving line or equityline of credit.

7. You are authorized to furnish copies of escrow instructions, amendments thereto, closing statements, title records and any other documents deposited in this escrow to lenders, real estate brokers and attorneys involved in this transaction.

8. You are not responsible for any personal property tax which may be assessed any former owner of the above described property, nor for the corporation or license tax of any corporation as a former owner.

9. Seller represents and warrants, and you shall be fully protected in assuming that, as to any insurance policy handed you, such policy is in full force, has not be hypothecated, and that all necessary premiums therefore have been paid. You will transmit for assignment any insurance policy handed you for use in this escrow, but you shall not be responsible for verifying the acceptance of the assignment and policy by the insurance company. ESCROW HOLDER WILL MAKE NO ATTEMPT TO VERIFY THE RECEIPT OF THE REQUEST FOR ASSIGNMENT BY THE ISSUING COMPANY. All parties are hereby placed on notice that if the insurance company should fail to receive said assignment, the issuing company may deny coverage for any loss suffered by Buyer. IT IS THE OBLIGATION OF THE BUYER TO VERIFY THE ACCEPTANCE OF THE ASSIGNMENT OF THE POLICY BY THE ISSUING COMPANY. Deliver assurances of title, and fire or other insurance policies, if any, to holder of senior encumbrance or his order, or if there be no encumbrances, then to the order of buyer.

10. You are not to be held responsible and/or liable in any manner whatsoever for the sufficiency or correctness as to form, manner of execution or validity of any instrument(s) deposited in this escrow, nor as to identity, authority or rights of any person executing the same. Neither shall you be liable for failure to comply with any of the provisions of any agreement, contract, or other instrument filed herein or referred to herein, including any form of Purchase Agreement, and your duties hereunder shall be limited to the safekeeping of such money, instruments or other documents received by you as escrow holder and for the disposition of same in accordance with the written instructions accepted by you in this escrow. Your knowledge of matters affecting the property, provided such facts do not prevent your compliance with these instructions, does not create any liability or duty in addition to your responsibility under these instructions. You shall have no responsibility to notify any of the parties to this escrow of any sale, resale, loan, exchange, or other transaction involving any property herein described or any profit realized by any person, firm or corporation in connection therewith, regardless of the fact that such transactions(s) may be handled by you in this escrow or in another escrow.

11. NO NOTICE, DEMAND OR CHANGE OF INSTRUCTION SHALL BE OF ANY EFFECT IN THIS ESCROW UNLESS GIVEN IN WRITING BY ALL PARTIES TO THIS ESCROW. In the event conflicting demands are made or notices served upon you with respect to this escrow, the parties hereby expressly agree that you shall have the absolute right at your election to do either or both of the following: (1) withhold and stop all further proceedings in, and performance of this escrow so long as such disagreement shall continue; in so doing, you shall not be or become liable for damages or interest to the undersigned or to any person for your failure to comply with such conflicting or adverse demands; or (2) file a suit in interpleader and obtain an order from the court requiring the parties to interplead and litigate in such court their several claims and rights amongst themselves. In the event such interpleader suit is brought, you shall ipso facto be fully released and discharged from all obligations to further perform any and all duties or obligations imposed upon you in this escrow. All of the parties to this escrow hereby jointly and severally promise and agree to pay promptly on demand, as well as to indemnify you and hold you harmless from and against, all litigation and interpleader costs, damages, judgments, attorney's fees, expenses, obligations and liabilities of every kind which you may incur or suffer in connection with or arising out of the escrow, whether said litigation, interpleader, obligations or expenses arise during the performance of this escrow, or subsequent thereto, directly or indirectly.

12. In the event that the conditions of this escrow have not been complied with at the expiration of the time period provided for herein, or any extension thereof, you are instructed to complete the same at the earliest possible date thereafter, unless we or either of us have made written demand upon you for the return of the money and/or instruments deposited by either of us, in which case you may withhold and stop all further proceedings in this escrow without liability upon your part for interest on funds held or for damages until written mutual cancellation instructions signed by all parties shall have been deposited in this escrow. You are then instructed to disburse the escrow funds and instruments accordingly less your proper charges, to the respective parties hereto whereupon this escrow will, without further notice, be considered terminated.

SELLER(S) INITIALS:_____    BUYER(S) INITIALS:_____

Page 4 of 5

ESCROW NO:22014730-JC                                                    Date: March 18, 2020

13. If there is no written activity by a principal to this escrow within six (6) months after the date designated for close of escrow or written extension thereof, your agency obligation shall terminate at your option and you are authorized to return all documents, monies or other items held by you to the parties who deposited them, less fees and charges herein provided.

14. You are not to be concerned with any questions of usury in any loan or encumbrance involved in this escrow and you are released from any responsibility or liability therefrom.

15. In the event that any party to this escrow utilizes facsimile transmitted signed documents, all parties hereby agree to accept and hereby instruct you to rely upon such documents as if they bore original signatures. The undersigned parties hereby agree to forward signed hard copies of instructions, and/or amendments within 48 hours of transmission. The undersigned parties further agree that when necessary to permit compliance with closing instructions, escrow holder may rely on facsimile transmitted demands.

16. If a party of this escrow unilaterally assigns or orders the proceeds of this escrow to be paid to other than the original parties to this escrow, such assignment or order shall be subordinate to the expenses of this escrow, liens of record on the subject property, and payments directed to be made by original parties together. If the result of such assignment or order would be to leave the escrow without sufficient funds to close, then you are directed to close nevertheless, and to pay such assignments or orders only out of the net proceeds due except for such assignments or orders, and to pay them in the order in which such assignments or orders are received by you.

17. All parties hereto agree, jointly and severally, to pay on demand, as well as to indemnify and hold you harmless from and against all costs, damages, judgments, attorney's fees, expenses, obligations and liabilities of any kind or nature which, in good faith, you may incur or sustain in connection with, or arising out of this escrow, and you are hereby given a lien upon all rights, title and interest of each of the undersigned in all escrowed papers and other property or monies deposited in this escrow, to protect your rights and to indemnify and reimburse you under this agreement.

18. You are not to be concerned with the giving of any disclosure required by Federal or State law, specifically but not exclusively, RESPA (Real Estate Settlement Procedures Act), Regulation Z (Truth in Lending Disclosures) or any other warnings or any other warranties, express or implied. Neither are you to be concerned with the effect of zoning ordinances, land division regulations, or building restrictions which may pertain to or affect the land or improvements that are the subject of this escrow.

19. The parties to this escrow have satisfied themselves outside of the escrow that the transaction covered by this escrow is not in violation of the Subdivision Act or any other law regulating land division, and you as escrow holder are relieved of all responsibility and/or liability in connection therewith and are not to be concerned with the enforcement of said laws.

20. You are authorized to destroy or dispose of all documents, instructions, correspondence, and other material pertaining to this escrow at the expiration of five (5) years from close or cancellation of escrow, without liability and without further notice to the parties.

21. Time is of the essence of these instructions. Signatures on any documents and instructions pertaining to this escrow indicate the signer's unconditional approval thereof. These instructions may be executed in counterparts, each of which shall be deemed an original regardless of date of execution or delivery, and together shall constitute one and the same documents. All written notice, communications, change to instructions and documents are required to be delivered timely at the office of Long Beach Escrow Corporation as set forth herein. You shall not be liable for any act or omission done in good faith, or for any claims, demands, losses or damages made, claimed or suffered by any party to this escrow, excepting such as may arise through or be caused by your willful neglect or gross misconduct.

Except for wire transfers, funds remitted to this escrow are subject to availability requirements imposed by section 12413.1 of the California Insurance Code. CASHIER'S, CERTIFIED, or TELLER'S checks, payable to escrow holder are generally available for disbursement three business days following the date of deposit.

Other forms of payment may cause extended delays in the closing of your transaction pursuant to the requirements imposed by State Law.

ALL PARTIES TO THIS ESCROW ACKNOWLEDGE THAT LONG BEACH ESCROW CORPORATION DOES NOT PROVIDE LEGAL ADVICE NOR HAS IT MADE ANY INVESTIGATION, REPRESENTATION OR ASSURANCES WHATSOEVER REGARDING THE LEGAL ASPECTS OR COMPLIANCE OF THIS TRANSACTION WITH ANY TAX, SECURITIES OR OTHER STATE OR FEDERAL LAWS. IT IS RECOMMENDED THAT THE PARTIES OBTAIN INDEPENDENT LEGAL COUNSEL AS TO SUCH MATTERS.

**THIS OFFICE IS GOVERNED BY RULES, REGULATIONS AND LAWS OF THE STATE OF CALIFORNIA, DEPARTMENT OF BUSINESS OVERSIGHT.**

SELLER(S) INITIALS:_____    BUYER(S) INITIALS:_____

EXHIBIT C

**LONG BEACH ESCROW CORPORATION**
**4515 E. ANAHEIM STREET, SECOND FLOOR**
**LONG BEACH, CA 90804**
**(562)-597-3336 * Fax (562)-597-2447**

## SELLER(S) ESTIMATED CLOSING STATEMENT

**ESCROW NO:** 22014730 - JC
**LOAN NUMBER:**
**DATE:** 5/13/2020
**TIME:** 03:35 PM
**SELLER(S):** COREY SIMS

**REVISED DATE:**
**CLOSING DATE:** 5/4/2020
**SETTLEMENT DATE:**
**DISBURSEMENT DATE:**

**PROPERTY ADDRESS:** 1320 W. 53RD ST., LOS ANGELES, CA 90037-3437

| | DEBITS | CREDITS |
|---|---|---|
| **TOTAL CONSIDERATION** | | $ 775,000.00 |
| | | |
| **Prorations** | | |
| 2ND HALF 19/20 TXS @ $2,500.19 for 6 Months  From 5/4/2020 Thru 6/30/2020 | | $ 794.58 |
| | | |
| **Commissions** | | |
| GOLDEN STATE REALTORS GROUP | $ 19,375.00 | |
| TBT REAL ESTATE | $ 19,375.00 | |
| | | |
| **Title Charges - TICOR TITLE COMPANY** | | |
| **[Total Title Charges: $7,100.20]** | | |
| 2ND HALF 19/20 TXS | $ 2,760.20 | |
| County Transfer Tax | $ 852.50 | |
| City Transfer Tax | $ 3,487.50 | |
| | | |
| **Escrow Charges - LONG BEACH ESCROW CORPORATION** | | |
| **[Total Escrow Charges: $2,085.00]** | | |
| Escrow Fee | $ 2,050.00 | |
| Wire Fee | $ 35.00 | |
| | | |
| **Loan Payoff** | | |
| **Loan Payoff to: SELECT PORTFOLIO SERVICING, INC.** | $ 280,284.16 | |
| **[Total Charges: $309,919.60]** | | |
| Interest @ $24.2200 Per Day From 4/20/2020 To 5/31/2020 | $ 1,017.24 | |
| ESCROW BALANCE | $ 12,684.95 | |
| Late Charges | $ 565.29 | |
| NSF FEE | $ 175.00 | |
| Loan Level Advance Balanc | $ 580.00 | |
| Interest to 4/20/20 | $ 14,612.96 | |
| **Loan Payoff to: Danco, Inc.** | $ 206,265.09 | |
| **[Total Charges: $282,358.19]** | | |
| Interest @ $79.0600 Per Day From 5/30/2018 To 5/31/2020 | $ 57,950.98 | |
| ATTORNEY FEES | $ 5,950.00 | |
| Demand Fee | $ 260.00 | |

ESCROW NO: 22014730-JC

| | DEBITS | CREDITS |
|---|---|---|
| NSF | $ 40.00 | |
| PROCESSING FEE | $ 80.00 | |
| RECONVEYANCE FEE | $ 45.00 | |
| FAX | $ 50.00 | |
| DEMAND FEE | $ 30.00 | |
| NOTARY FEE | $ 20.00 | |
| FORECLOSURE FEES | $ 5,995.00 | |
| REGISTRATION | $ 310.00 | |
| INSPECTION | $ 50.00 | |
| Late Charge | $ 5,312.12 | |
| **Loan Payoff to: TERRA NOVA CAPITAL INC.** | $ 25,000.00 | |
| **[Total Charges: $25,110.00]** | | |
| Reconveyance Fee | $ 60.00 | |
| Demand Fee | $ 50.00 | |
| **Loan Payoff to: FRANCHISE TAX BOARD** | $ 132,980.72 | |
| **[Total Charges: $132,980.72]** | | |
| **Loan Payoff to: INTERNAL REVENUE SERVICE** | $ 19,750.40 | |
| **[Total Charges: $19,750.40]** | | |
| | | |
| **Approximate Amount Due Escrow** | | $ 42,259.53 |
| **\*Totals\*** | $ 818,054.11 | $ 818,054.11 |

COREY SIMS

| In re: | CHAPTER: **11** |
| **Corey Demon Sims** | |
| Debtor(s). | CASE NUMBER: **2:19-bk-19146-WB** |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**800 West 6th Street., Suite 940**
**Los Angeles, CA 90017**

A true and correct copy of the foregoing document entitled (*specify*):  **DEBTOR'S NOTICE OF MOTION AND MOTION TO: (1) APPROVE SALE OF REAL PROPERTY LOCATED AT 1320 W. 53rd ST., LOS ANGELES, CA 90037-3437 FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS, AND (2) APPROVE PAYMENT OF REAL ESTATE BROKER'S COMMISSIONS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF CHRISTINA KIMBLE IN SUPPORT THEREOF**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **6/26/2020** , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**ATTORNEY FOR CREDITOR** Kelly M Kaufmann bknotice@mccarthyholthus.com, kraftery@ecf.courtdrive.com
**ATTORNEY FOR CREDITOR** Mark S Krause bankruptcy@zbslaw.com, mkrause@ecf.courtdrive.com
**ATTORNEY FOR U.S. TRUSTEE** Dare Law dare.law@usdoj.gov

**ATTORNEY FOR CREDITOR** Erin M McCartney bankruptcy@zbslaw.com, emccartney@ecf.courtdrive.com

**ATTORNEY FOR CREDITOR** Austin P Nagel melissa@apnagellaw.com

**ATTORNEY FOR CREDITOR** Lane M Nussbaum lnussbaum@nussbaumapc.com, info@nussbaumapc.com
**U.S. TRUSTEE** United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
**ATTORNEY FOR DEBTOR** Thomas B Ure tbuesq@aol.com, urelawfirm@jubileebk.net;tom@ecf.courtdrive.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On  **6/26/2020**  , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

United States Bankruptcy Court
Honorable Julia W. Brand
255 E. Temple Street, Suite 1382/ Courtroom 1375
Los Angeles, CA 90012


Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: **Corey Demon Sims** | CHAPTER **11** |
| | CASE NUMBER **2:19-bk-19146-WB** |
| Debtor(s). | |

United States Attorney's Office
Federal Building, Room 7516
300 North Los Angeles Street
Los Angeles, CA 90012

United States Department of Justice
Ben Franklin Station
P.O. Box 683
Washington, DC 20044

Securities and Exchange Commission
100 F St. NE,
Washington Park, DC 20549

Franchise Tax Board Bankruptcy Section, MS: A-340
P. O. Box 2952
Sacramento, CA 95812-2952

☑ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 6/26/2020 | Yolanda Segura | /s/ Yolanda Segura |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

DANCO INC.
2476 Overland Ave., Ste. 203
Los Angeles, CA 90064-3374

The Bank of New York Mellon FKA The Bank of
14841 DALLAS PARKWAY, SUITE 425
DALLAS, TX 75254-8067

The Bank of New York Mellon, f/k/a The Bank
c/o McCarthy & Holthus, LLP
411 Ivy Street
San Diego, CA 92101-2108

U.S. Bank National Association, not in its i
c/o ZBS Law, LLP
30 Corporate Park
Suite 450
Irvine, CA 92606-3401

Los Angeles Division
255 East Temple Street,
Los Angeles, CA 90012-3332

Amanuel Devon Brooks
169 West 38 th Street
Los Angeles, CA 90037

Bellagio, LLC
JamesA. Stearman, Esq.
1235 N. Harbor Blvd.,#200
Fullerton, CA 92832

CA Franchise Tax Board
Attn: Bankruptcy
MS: A-340 P.O. Box 2952
Sacramento CA 92512-2952

California Fmnchise Tax Board
BankruptcyMS A-240-
P.O Box 2952
Sacramento, CA 95812-2952

Citibank (South Dakota), N.A.
Hunt & Henriques
151 Bernal Road, Suite 8
San Jose, CA 95119-1491

Citibank (South Dakota). N.A.
c/o Hunt & Henriques
151 Bernal Road, Suite 8
San Jose, CA 95119-1306

Citibank NA
ATTN: Barbara J. Desoer, CEO
399 Park Ave.
New York, NY 10022-4614

Danco, Inc.
2467 Overland Ave. #203
LosAngeles , CA 90064

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

HaulAway Storage Ctr.
PO Box 186
Stanton, CA 90680-0186

Internal Revenue Service
PO Box 7346
Pittsurgh, PA 15213-0346

Kenneth J. Ellis
Phillip Scholosberg
12650 Riverside Drive
North Hollywood, CA 91607-3421

Latonya Hall
535 1/2 W 41St Place
Los Angeles, CA 90037-2020

Latonya Hall
535 1/2 W 41st Pl
Los Angeles CA 90037-2020

Latonya Hall
5351/2 W 41st Place
Los Angeles, CA 90037

Logan Mortgage/Menci
Capital Corp
C/O The Ryan Firm
1100 N Tustin Ave.,
Ste 200
Anaheim CA 92807-1730

Logan Mortgage/Menci Capital Corp
The Ryan Firm
30 Corporate Park
Irvine, CA 92606-5131

Logan Mortgage/Investment
Menci Capital Corp.
The Ryan Firm
30 Corporate Park
Irvine, CA 92606-5131

Los Angeles Housing Department
Rent EscrowAccount Program
P.O. Box 17460
Los Angeles , CA 90017-0460

Los Angeles Tax Collector
225 N. Hill St., Rm. 122
Los Angeles, CA 90012-3253

PennyMac Loan Services LLC
17161 E Saint Andrews Pl
Santa Ana CA 92705

Real Time Resolutions, Inc.
1349 Empire Central Drive, Suite #1
Dallas, Texas 75247-4029

RealTime Resolutions
1750 Regal Row, Ste. 120
Dallas, TX 75235-2287

Regina Robinson
2049 Century Park East, Ste. 3800
Los Angeles, CA 90067-3218

Rushmore Loan Management
PO Box 55004
Irvine, CA 92619-5004

SLS
8742 Lucent Blvd., Suite 300
Highlands Ranch, CO 80129-2386

SaMeep Storage
2045 Rosecrans Ave.
Gardena, CA 90249-2931

Select Portfolio Servicing
PO Bo 65250
Salt Lake City, UT 84165-0250

Selene Finance
9390 Richmond #400
Houston, TX 77063-3947

Specialized Loan Servicing
8742 Lucent Blvd Ste 300
Highlands Ranch CO 80129-2386

Specialty Loan Servicing
8742 Lucent Blvd-, Suite 300
Highlands Ranch, CO 80129-2386

State of California Franchise Tax Board
Collection Advisory Team, MS A-240
P.O. Box 2952
Sacramento, CA 95812-2952

The Bank of New York Mellon
c/o Select Portfolio Servicing, Inc.
P.O. Box 65250
Salt Lake City, UT 84165-0250

The Bank of New York Mellon Trustee (See 410
c/o Specialized Loan Servicing LLC
8742 Lucent Blvd, Suite 300
Highlands Ranch, Colorado 80129-2386

U.S Bank National Association, not in its i
Rushmore Loan Management Services
P.O. Box 55004
Irvine, CA 92619-5004

U.S. Bank National Association, not in its i
Selene Finance, LP
Attn: BK Dept 9990 Richmond Avenue, Suit
Houston, TX 77042-4559

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Wells Fargo Bank, N.A.
Ofc. General Cnsl.
21680 Gateway Center Dr., Ste. 280
Diamond Barv CA 91765-2456

Wells Fargo Bank, N.A.
Office of the General Counsel for
Wells Fargo
21680 Gateway Center Drive, Suite 280
Diamond Bar, CA 91765-2456

Western Commercial Bank
21550 Oxnard St., Ste. 100
Woodland Hills, CA 91367-7132

Corey Demon Sims
7136 Glasgow Ave
Los Angeles, CA 90045-2208

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)U.S. Bank National Association, not in its
c/o ZBS Law, LLP
30 Corporate Park, Suite 450
Irvine, CA 92606-3401

(u)Menci Capital Corporation
The Ryan Firm
1100 N. Tustin Avenue, Suite 200

(d)Regina Robinson
2049 Century Park East, Suite 3800
Los Angeles, CA 90067-3218

(d)Western Commercial Bank
21550 Oxnard Street, Suite 100
Woodland Hills, CA 91367-7132

End of Label Matrix
Mailable recipients    48
Bypassed recipients     4
Total                  52